**Opinion issued October 28, 2025**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-24-00327-CV

———————————

**CITY OF PASADENA, Appellant**

**V.**

**AZAEL SEPULVEDA, Appellee**

---

**On Appeal from the 190th District Court**
**Harris County, Texas**
**Trial Court Case No. 2023-62583**

---

## MEMORANDUM OPINION

This appeal arises from the City of Pasadena's rejection of a preliminary site plan submitted by Azael Sepulveda. An approved site plan is a prerequisite to obtain a certificate of occupancy, which Sepulveda needs to open his automobile repair shop. Sepulveda and the City previously agreed to certain conditions upon which the City would approve a certificate of occupancy. When the City rejected Sepulveda's

preliminary site plan, Sepulveda sued the City for breach of contract and constitutional violations of due course of law and equal protection. The City moved for a plea to the jurisdiction, which the trial court denied.

In two issues, the City contends that the trial court erred by denying its plea to the jurisdiction because Sepulveda's claims are not ripe and are barred by the City's governmental immunity.

Because we conclude Sepulveda's claims are not ripe, we reverse the trial court's order denying the City's plea to the jurisdiction and render judgment dismissing Sepulveda's claims for lack of jurisdiction.

**Background**

This is Sepulveda's second suit against the City of Pasadena regarding property he purchased on Shaver Street ("the Property") in Pasadena. Sepulveda purchased the Property with the intent of using it as an automobile electrical repair shop, Oz Mechanics. A City ordinance requires automobile repair shops to have ten off-street parking spaces per one thousand square feet. To comply with this ordinance, the Property must provide 28 parking spaces. In 2021, the City denied Sepulveda's land use compliance review application, a prerequisite to applying for a certificate of occupancy, because (1) the Property did not comply with the ordinance and (2) the paving and drives did not comply with the City codes.

2

Sepulveda applied for a variance, but the City denied his application because it failed to meet the variance criteria in the City code.

This denial led Sepulveda to bring his first suit against the City regarding the Property, alleging the City's parking requirements as applied to the Property were unconstitutional. The trial court denied the City's plea to the jurisdiction and issued a temporary injunction forbidding the City from enforcing the parking ordinance against Sepulveda. The City filed an interlocutory appeal.

Thereafter, the parties entered into a mediated settlement agreement (the "Agreement") by which the City agreed, among other things, to approve Sepulveda's application for certificate of occupancy for Oz Mechanics to use the Property for automotive electrical repair according to the four following conditions:

- The Property will provide seven parking spots: three in front of the main building on the Property and four on the western side of the building. No cars parked on the property may back out on to the right of way;

- The area on the western side of the building will be paved from the Property line to the shed with asphalt or concrete and the fencing on this portion of the Property will be removed;

- The floor area of the shed will be paved with concrete, if it is not already; [and]

- Bollards will be installed . . . with a maximum of four feet between bollards . . . .

Taking the first step in submitting a certificate of occupancy application, Sepulveda submitted a site plan to the City. But the City disapproved his site plan.

The City's letter reasoned, "(1) [B]ollards must be a maximum of four feet apart, necessitating that [Sepulveda] add more bollards; and (2) the drive-aisle widths did not meet City requirements." The City also added four further requirements in its marked-up site plan included with the letter:

- The site plans needed to include drainage and restrictor calculations, and the Property needed to use a particular internal drainage system;

- The Property needed a six-inch curb around the paving and driveways;

- The Property needed a five-foot setback made of grass; and

- Vehicles could not back into the right-of-way.

Upon the denial of his site plan, Sepulveda did not apply for any variances or appeal the denial of his site plan. Sepulveda brought this second suit against the City, alleging the City breached the Agreement and violated the Texas Constitution's "Due Course of Law" and equal protection provisions. In his petition, Sepulveda agreed to fix the bollards, add drainage calculations, follow the City's preferred system, and add a curb throughout the Property. Sepulveda alleged that the City breached the Agreement because (1) the City's requirement of larger drive-aisle widths would not allow the Property to have the four parking spaces on the side; (2) the City's requirement of a five-foot grass setback conflicts with the provision of the Agreement that the area on the side of the building "will be paved from the Property line to the shed;" and (3) the City contorts the definition of "right-of-way" by prohibiting vehicles from backing into the "right-of-way."

4

Sepulveda defined the City's requirements that allegedly breach the parties' Agreement as the "New Parking Demands." He alleged that these "New Parking Demands," as applied to Sepulveda, violate the Texas Constitution's Due Course of Law guarantee. Additionally, he alleged that the City's disparate treatment of him violates his right to equal protection of the laws.

In its plea to the jurisdiction, the City argued that Sepulveda's claims were not ripe and that the City's governmental immunity bars Sepulveda's claims. After two hearings, the trial court denied the City's plea to the jurisdiction.

## Ripeness

In its first issue, the City contends that the trial court erred in denying its plea to the jurisdiction because Sepulveda's claims are not ripe. We agree.

### A. Standard of Review

Ripeness is an element of subject-matter jurisdiction and thus is subject to a de novo standard of review. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998). When reviewing a plea to the jurisdiction in which disputed evidence implicates both the court's subject-matter jurisdiction and the merits of the case, we consider relevant evidence submitted by the parties to determine whether a fact issue exists. *Suarez v. City of Tex. City*, 465 S.W.3d 623, 632-33 (Tex. 2015). "We take as true all evidence favorable to the nonmovant, indulge every reasonable inference, and resolve any doubts in the nonmovant's favor." *Id.* at 633. If the evidence creates

5

a fact question regarding jurisdiction, then the plea must be denied because the fact finder must resolve the issue. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 227-28 (Tex. 2004). "If the evidence fails to raise a question of fact, however, the plea to the jurisdiction must be granted as a matter of law." *Suarez*, 465 S.W.3d at 633.

## B. Analysis

"Ripeness is a jurisdictional prerequisite to suit." *Zaatari v. City of Austin*, 615 S.W.3d 172, 183 (Tex. App.—Austin 2019, pet. denied). "[A]voiding premature litigation prevents courts from entangling themselves in abstract disagreements over administrative policies while at the same time serving to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*, 971 S.W.2d 439, 443 (Tex. 1998) (citation modified).

When determining whether a claim is ripe, "courts must consider whether, *at the time the suit is filed*, the facts are sufficiently developed so that an injury has occurred or is likely to occur, rather than being contingent or remote." *Patel v. Tex. Dep't of Licensing & Regulation*, 469 S.W.3d 69, 78 (Tex. 2015) (citation modified). Thus, a case is not ripe if it involves uncertain or contingent future events that may not occur as anticipated. *Id*.

In land use cases, a claim is not ripe without a "final and authoritative determination" regarding the application of a regulation because a court "cannot determine whether a regulation has gone 'too far' unless it knows how far the regulation goes." *Commons of Lake Houston, Ltd. v. City of Houston*, 711 S.W.3d 666, 684 (Tex. 2025). Generally, to obtain a final determination, the property owner must submit an application for the permitted use and seek a variance if the application is denied. *Id.* But "futile variance requests or re-applications are not required." *Id.* at 685 (citing *Mayhew*, 964 S.W.2d at 929). A subsequent application or variance request is futile when the government has clarified that the owner cannot obtain approval for his desired use, that his request for a permit has been definitively rejected, or that any subsequent request would not make a difference. *Id.*

Sepulveda argues that the City, by denying his site plan, gave him its definitive position that he may not open his automobile repair shop at his Property. In support of his argument, Sepulveda relies on our decision in *City of Houston v. Mack*, 312 S.W.3d 855, 863 (Tex. App.—Houston [1st Dist.] 2009, no pet.). There, flood insurance rate maps adopted by the city in 2007 placed the Macks' property in a floodway for the first time. *Id.* The city also amended its flood ordinance to further restrict development in the floodway. *Id.* According to the Macks, the new designation prohibited the Macks from obtaining building permits for new

construction or improvements to existing structures on their property. *See id.* at 859, 862.

The Macks sued the city for inverse condemnation. *Id.* at 859. The city argued that the Macks' claim was not ripe because they had had not applied for a building permit or sought a variance. *Id.* But, noting that the flood ordinance stripped the government's discretion, this Court concluded that the property owners' claims fell within the narrow futility exception to the final decision requirement such that the plaintiff-landowners' claims were ripe. *See id.*

Sepulveda does not direct us to an ordinance that has a similar effect in this case. Here, once Sepulveda formally applies for a certificate of occupancy, the City retains the discretion regarding whether to approve Sepulveda's application or grant a variance. Thus, there must be a final decision by the City regarding the application of the ordinances at issue. *See Mayhew*, 64 S.W.2d at 929.

Sepulveda has not obtained a final decision from the City. The City denied his preliminary site plan based on a number of requirements Sepulveda had not met. Sepulveda agrees that the following requirements do not or are unlikely to conflict with the Agreement: (1) fixing the bollards, (2) adding drainage calculations and using a particular drainage system, and (3) adding a curb throughout the Property. Yet, Sepulveda did not submit a revised preliminary site plan. In his petition, he admits that he "will agree" to revise his site plan to comply with these requirements.

8

But such futuristic language itself evinces that his claims are not ripe. Additionally, although Sepulveda complains of the City's requirements regarding the drive-aisle widths, setback spacing, and right-of-way definition, Sepulveda did not seek a variance from any of these requirements. *See Mayhew*, 964 S.W.2d at 929 ("A 'final decision' usually requires both a rejected development plan and the denial of a variance from the controlling regulations."). Further, he did not appeal the denial of his site plan to the Planning and Zoning Commission or to the City Council. *See* PASADENA, TEX. CODE OF ORDINANCES ch. 28, art. VII § 28-66(e). Because there is not yet a final determination by the City, his constitutional claims are not ripe.

Regarding his breach-of-contract claim, Sepulveda contends that his site plan "generally complied with the Agreement" and that the City's disapproval of his site plan conflicts with the Agreement. The City responds that his site plan did not comply with the Agreement. We agree with the City. The Agreement states that the bollards must be installed with a "maximum of four feet between bollards" and "[n]o that cars parked on the property may back out on to the right of way." Non-compliance with these conditions in the Agreement were two of the reasons the City gave for denying Sepulveda's site plan. Because Sepulveda has not yet submitted a site plan complying with the conditions in the Agreement, his allegation that the City breached the Agreement is mere speculation about a future event. At this time, it is uncertain whether the City will approve Sepulveda's future application for a

certificate of occupancy that complies with the Agreement's conditions. *See Patterson*, 971 S.W.2d at 443 ("A case is not ripe when its resolution depends on contingent or hypothetical facts, or upon events that have not yet come to pass."). Thus, his breach of contract claim is not ripe for adjudication.

Because Sepulveda's claims are not ripe, we hold that the trial court erred in denying the City's plea to the jurisdiction. Accordingly, we sustain the City's first issue.[1]

## Conclusion

We reverse the trial court's order denying the City's plea to the jurisdiction and render judgment dismissing Sepulveda's claims for lack of jurisdiction.

Clint Morgan
Justice

Panel consists of Chief Justice Adams and Justices Morgan and Dokupil.

---

[1] Because the first issue is dispositive, we need not address the City's second issue, which contends that the trial court erred in denying the plea because Sepulveda's claims are barred by governmental immunity. *See* TEX. R. APP. P. 47.1.

10